IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>KIM DAVIS BECKSTROM,<br><br>    Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:07-CR-00089-TC-BCW |

Defendant Kim Davis Beckstrom was indicted on one count of knowing and intentional distribution of fifty grams or more of methamphetamine, and aiding and abetting, in violation of 21 U.S.C. § 812, 841(a)(1) and 18 U.S.C. § 2. Mr. Beckstrom filed a motion to suppress statements obtained by the government during an interview on September 18, 2007. The interview occurred after Mr. Beckstrom was taken into custody during the search of his auto body repair shop. Mr. Beckstrom contends the statements should be suppressed because they were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and because they were obtained by unlawful coercion. For the reasons set forth below, Mr. Beckstrom's Motion (1:07-CR-00089 Docket No. 64) is DENIED.

**FINDINGS OF FACT**

The controlling issues are whether Mr. Beckstrom made a voluntary waiver of his Miranda rights and whether Mr. Beckstrom voluntarily made incriminating statements during his interview. The testimony given during the August and September evidentiary hearings on the

motion presents competing narratives regarding the interview.  Mr. Beckstrom's testimony materially contradicts the testimony of Officer Juston Dickson and Special Agent George Dougherty.  The answers to both questions depends on which witnesses the court finds to be most credible.

The circumstances of Mr. Beckstrom's interview are set forth below.  Where discrepancies exist between the competing witnesses' testimony, they are so noted.

**The Arrest**

On September 18, 2007 at approximately 9:00 pm, the Weber/Morgan Narcotics Task Force (Task Force), including Officer Dickson of the Ogden City Police Department and Agent Dougherty of the Federal Bureau of Investigation (FBI), executed a search warrant of Beckstrom Auto Body at 1945 Lincoln Ave, Ogden, Utah.  (Transcript of August 26, 2008 Evidentiary Hearing ("Aug. Tr.") at 4-5, 37-38)  The search of the shop was planned in conjunction with a controlled drug buy.  (Id. at 38) An undercover agent who had previously made a controlled buy from Mr. Beckstrom placed a phone call to the shop.  (Id. at 38-39) The agent asked Mr. Beckstrom to leave the building and meet him outside.  (Id.)  Mr. Beckstrom went outside and was arrested by waiting Task Force members.  (Id.)  During the arrest, Mr. Beckstrom was thrown to the ground by Task Force members, including Agent Dougherty, and placed in handcuffs.  (Id. at 41) When Mr. Beckstrom was arrested he had one baggie of methamphetamine and one of M.S.M. in his pocket.  (Aug. Tr. at 28-29; Sept. Tr. at 9)

**The Interview**

Approximately twenty minutes after his arrest, Mr. Beckstrom was taken to the Ogden Police Station by Officer Dickson and Agent Dougherty.  (Id. at 7, 42)  At the police station, the

officers took Mr. Beckstrom, who was handcuffed, into a briefing room.  (Id. at 7, 45) Officer Dickson and Agent Dougherty testified that Officer Dickson read Mr. Beckstrom his Miranda rights from a laminated card he had in his wallet.  (Id. at 8, 45) Officer Dickson stated he received the card from the Utah Narcotics Officer Association training approximately a year earlier.  (Id. at 8) Both also testified that Mr. Beckstrom said he understood those rights and was willing to talk to the officers.  (Id. at 9, 45) Mr. Beckstrom testified that Officer Dickson asked him only if he knew his rights and that he responded affirmatively, but that at no point did Officer Dickson read him his rights.  (Transcript of September 15, 2008 Evidentiary Hearing ("Sept. Tr.") at 14) No one disputes that Mr. Beckstrom was not offered and did not sign a waiver of his rights.  (Aug. Tr. at 22)

The officers testified that after Mr. Beckstrom had been read his rights, he asked them what was going on.  (Id. at 46) Agent Dougherty responded that they wanted to talk with him about some narcotics transactions.  Mr. Beckstrom asked, "What do you have on me?"  (Id.) Agent Dougherty told him "You sold one pound of methamphetamine to an undercover cop.  (Id. at 28, 46)  The officers testified that Mr. Beckstrom responded, "Yeah, I did that, but what else do you have?"  (Id.)  Mr. Beckstrom testified that he made no such admission.  (Sept. Tr. at 16, 21-22)

The officers further testified that Mr. Beckstrom offered to provide information in exchange for a reduced sentence.  (Aug. Tr. at 47) Agent Dougherty told Mr. Beckstrom that based on his criminal history, he was looking at a life sentence.  (Id. at 24-25, 47, 63-64) Agent Dougherty testified that he informed Mr. Beckstrom that the Assistant United States Attorney had indicated she would recommend a "5-K reduction" if Mr. Beckstrom cooperated.  (Id. at 47-

48) The officers testified that Mr. Beckstrom responded, "5-K, that's it? I got to get more than that." (Id. at 47) Mr. Beckstrom testified that Agent Dougherty promised him a twenty-year sentence in exchange for a confession. (Sept. Tr. at 17) Agent Dougherty denied making any specific promises regarding Mr. Beckstrom's sentence. (Aug. Tr. 48-49)

The officers testified that Mr. Beckstrom asked for protection for his family in the event he offered information on other drug dealers and Agent Dougherty told him that was a possibility. (Aug. Tr. at 27, 64) Mr. Beckstrom testified that Agent Dougherty promised protection for his family if Mr. Beckstrom would confess. (Sept. Tr. at 18) Mr. Beckstrom also testified that he made three attempts to end the interview by asking the officers to take him to jail. (Id. at 18-21) This testimony was contradicted by Agent Dougherty who testified that Mr. Beckstrom never asked for an attorney and never asked to end the interview. (Aug. Tr. at 51)

Although the interview of Mr. Beckstrom had been anticipated, the officers did not make any attempts to record it. (Id. at 20, 27, 54-55) The Ogden Police Department allows its officers to record interviews. (Id. at 27) The FBI's policy is to never record interviews. (Id. at 55) Officer Dickson filed a type-written report of the interview, but Agent Dougherty filed no report. (Id. at 63) Agent Dougherty testified that it was customary for only one Task Force member to write a report when interviews were jointly conducted. (Id.)

**The Court's Credibility Determination**

As noted, the witness often gave conflicting versions of the events. First, the officers testified that Officer Dickson read Mr. Beckstrom his <u>Miranda</u> rights, while Mr. Beckstrom maintains he was not read his rights. Second, Mr. Beckstrom testified that he was promised a twenty-year sentence and protection for his family if he confessed. The officers claim no

promises were made, but that they did make an offer to speak with the Assistant United States Attorney regarding his sentence and to look for protection for his family in the event he offered information on other drug dealers. Third, Mr. Beckstrom denies the officers' testimony that he confessed to the September 13 drug buy. Fourth, Mr. Beckstrom maintains he made three requests to terminate the interview. The officers deny any such requests were made.

The court finds that Officer Dickson and Agent Dougherty were more credible on the stand than Mr. Beckstrom. Throughout their testimony, Officer Dickson and Agent Dougherty, both longtime law enforcement veterans, provided a coherent and consistent version of the events of September 18, 2007. Their testimony corroborated one another and demonstrated its reliability. The court particularly notes the lack of significant discrepancies in their testimony over the course of the two-day evidentiary hearing. The court also took into account Mr. Beckstrom's personal interest, as a defendant, in the outcome of the hearing.

Mr. Beckstrom argues that the failure to record his interview demonstrates a calculated move by the officers to fabricate a confession and ensure no contrary evidence would exist. He argues that a tape recorder is a readily available, inexpensive tool and the Task Force anticipated Mr. Beckstrom's arrest well in advance. He maintains the lack of documentary evidence, including a lack of detail in Officer Dickson's written report, is indicative of a lack of reliability. The court does not agree. As Agent Dougherty testified, in the hundreds of interviews he has done as a member of the Task Force, none were recorded. (Aug. Tr. at 56-57) He also explained that the written report was intended to be only a summary and not an exhaustive catalogue of the interview. (Sept. Tr. at 30) The court finds the officers acted appropriately and their credibility is not undermined by the lack of a recording or any lack of detail in the written report.

## CONCLUSIONS OF LAW

The government has met its burden in demonstrating that Mr. Beckstrom made a voluntary waiver of his Miranda rights. The waiver was voluntary if the totality of the circumstances shows that "(1) the waiver was a product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving." United States v. Bautista, 145 F.3d 1140, 1149 (10th Cir. 1998). Officer Dickson read Mr. Beckstrom his rights and Mr. Beckstrom stated that he understood those rights. The lack of a signed waiver form does not render that verbal consent involuntary. United States v. Gell-Iren, 146 F.3d 827, 830 (10th Cir. 1998). Despite this understanding of his rights, Mr. Beckstrom agreed to talk to the agents and did not attempt to end the interview or obtain an attorney. In addition, no evidence tends to show Mr. Beckstrom was coerced into giving is assent to the interview.

Furthermore, nothing in the interview could be construed as coercive and the resulting confession was therefore also voluntary. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). The officers did not make any promises to Mr. Beckstrom regarding his sentence, and only indicated that they could inform the Assistant United States Attorney of his cooperation and that she could recommend a reduction under the United States Sentencing Guidelines. Furthermore, the officers' testimony showed that the discussions of Mr. Beckstrom's sentence occurred after Mr. Beckstrom had confessed to the September 13 drug transaction and were in the context of trying to elicit information from Mr. Beckstrom on other drug dealers, not an attempt to procure a confession. Accordingly, the court concludes the confession was voluntary

and should not be suppressed.

## ORDER

For the foregoing reasons, Defendant Kim Davis Beckstrom's Motion to Suppress Evidence (Docket No. 64) is DENIED.

DATED this 18th day of December, 2008.

> BY THE COURT:
>
> *Tena Campbell*
>
> TENA CAMPBELL
> Chief Judge