IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

(NORTHERN DIVISION)

FILED
U.S. DISTRICT COURT

2019 JUN -3 P 4: 00

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

UNITED STATES OF AMERICA,            ]

    Respondent-Plaintiff,            ]

                V.            ]        Criminal Case No. 1:07-CR-89-TC

                      ]

KIM DAVIS BECKSTROM,            ]       Honorable Judge TENA CAMPBELL

    Petitioner-Defendant.            ]

---

## PETITION FOR COMPASSIONATE RELEASE
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

---

COMES NOW, KIM DAVIS BECKSTROM, (hereinafter referre to as " Petitioner ")
as a Federal Prisoner, having " exhausted all of the available rights to
administrative appeals, and more than 30 days of the lapse of the institution
of confinment's WARDEN'S failue to respond or otherwise receive the request
administratively, " respectfully requests that this Honorable Court take
Jurisdiction as to the Congressionally enacted " First Step Act of 2018, 115-
th Cong. § 603(b) Signed by the President of the United States on December -
21, 2018), and GRANT a Compassionate Release as allowed therein.

That, as this Petitioner is in fact over the age of 60, and having served the portion of " two-thirds of his setence, " (2/3), and is otherwise eligible for modification of such, he will thereby and herewith, make the showing of such, herein this Petition respectfully, to wit;

## I. LIBERAL CONSTRUCTION:

This Petitioner is a federal prisoner proceeding pro se, and is untrainned in the law, and thus, respectfully requests that this Honorable court afford his pleadings herein a liberal construction. See **United States V. Pinson**, 584 F. 3d. 972, 975 (10th Cir. 2009)

However, he will make this Petition and request respectfully to this Honorable Court seeking the Grace to which may be clearly demonstrated herewith to the best of his ability.

### A. APPOINTMENT OF COUNSEL:

Although there is no " constitutional right to counsel beyond the direct appeal of a criminal conviction, " See **United States V. Brown**, 556 F. 3d. **1108, 1113 (10th Cir. 2009)(quoting Coronado V. Ward, 571 F. 3d. 1212, 1218 (10th Cir. 2008))** if it aid in this Court's examination and determination of the matter set forth herein, this Petitioner would receive the appointment of such limited to the pleading's set forth in this Petition.

Nevertheless, as stated, this Petitioner will make this presentment, respectfully and to the best of his ability herewith to wit;

## II. PROCEDURAL HISTORY AND FACTUAL BASIS IN SUPPORT OF THIS PETITION FOR COMPASSIONATE RELEASE:

On September 18, 2007, this Petitioner was arrested in Ogden, Utah after Official's of a Narcotics Task Force, including agents of the Federal Bureau of Investigation after a previous " controlled buy of methaphetamine. " (On-September 11, 2007)

Petitioner was thereafter, charged with one count of " **possession of fifty grams or more of methapmhetamine with the intent to distribute," in violation of Title 21, of the United States Code Section's 841(a), and 841(b)(1)(A).** This to which carried a statutory mandatory minimum-maximum sentence of **Ten years to life imprisonment. (Id.)**

Petitioner therewith plead not guilty and to which he thereafter, requested trial by jury.[1] **(This based on a miscommunication with counsel)**

Subsequently, the Government filed an " information " pursuant to **21 U.S.C. § 851(a)(1),** to which would expose this Petitioner not to the megar " doubled mandatory minimum, but, ' to the statutory **maximum mandatory life imprisonment '"** if found guilty by the jury. (Take note: that this was based upon this Petitioner's prior convictions to which stemmed from the " same investigation, and the same arrest, but two-separate Soveriegn's-

---

n.1: There are facts alleged in sworn testimony to which this Honorable Court did in fact hold an evidentiary hearing in a proceeding pursuant to 28-U.S.C. § 2255, to which detailed an interaction between this Petitioner and his appointed representation to which caused this Petitioner to reject a plea offer of an alleged " 15 year plea agreement." See Case No.-1:12-cv-226-TC. This to which is relevant only upon necessity and for the sake of backround and determination measured up to arguments herein.

...State/Federal)).

Nevertheless, this Petitioner proceeded to trial by jury under these premise as a " non-violent drug distribution offense. "

Therewith, this Petitioner presented what is known as a " Duress Defense, " detailing as to how it was that he came into the activity that he did as the result of a conundrum as the result of Petitioner connecting two parties together. One life long friend with suppliers. This to whom came into a debt with the suppliers and thereafter, threatened this Petitioner to pay of the debt. This by death.

this to which resulted in the sale of the methamphetamine and the subsequent investigation, and thereafter, the ultimate conviction by said jury.

Petitioner was therewith sentenced to a term of " mandatory life imprisonment. " (See Criminal Judgment, also 21 U.S.C. § 841(b)(1)(A), and - 851(a)(1))

Petitioner filed an appeal thereto claiming basically that (1) " this district court improperly denied [him] the opportunity to present a duress defense; (2) ' it erred in treating [his] two prior felony convictions as a separate criminal episode sufficient to qualify under § 841(b)(1)(A),' (3) - and ' unconstitutionally increased his maximum sentence based on facts never found by a jury.'" See U.S.C.A. 10th Cir. 10-4108.

On July 28, 2011, this appeal and Petitioner's convictions and sentence was affirmed. See United States V. Beckstrom, 647 F. 3d. 1012 (10th Cir. 2011)

Thereafter, as at the time, the Supreme Court made it's ruling's in the companion landmark decision's in Lafler V. Cooper, (2012), and Missouri V. Frye, (2012), this Petitioner did in fact exercise his right to petition for

... grievance and on **October 22, 2012,** presented a motion to " vacate, set aside, or correct a sentence by a person in federal custody. <u>See</u> **Id. Case No. 1:12-cv-226-TC.**

This in basic premise that the Petitioner's appointed counsel was " ineffective in violation of rights guaranteed by and through the Sixth Amendment of the Constitution of the United States, " during plea negotaiations. This to which resulted in his rejection of a " **15 year plea deal. "**

The government vehmently denied this claim, however, subsequent hearing's produced testimony to which called the objection's into question. Further, there was/is documentation to this day that would have assisted in this determination to which was not produced.

Nevertheless, as Petitioner attempted to amend the pleading's under **Fed. R. Civ. P. 15(a),** this to whncih was denied with all of this Petitioner's other claims. <u>See</u> <u>**Kim Davis Beckstrom V. United States**</u>, No. 1:12-cv-226-TC, 2014 U.S. Dist. LEXIS 42383 (D. Utah, March 27, 2014)

Petitioner did in fact make an appeal to this decision to the **Tenth Circuit,** this however, was too denied on **June 29, 2015.** <u>See</u> <u>**United States V. Beckstrom,**</u> 2015 U.S. App. LEXIS 11144 (10th Cir., June 29, 2015)

Thereafter, this Petitioner did remain in the custody of the U.S. Attorney General with a sentence of life imprisonment for a non-violent drug distribution charge, to where he was housed at the United States Penitentiary Victorville, in Adelanto, California, where he was in fact a model inmate with clear conduct. (i.e. Without any incident reports)

However, in an ever evolving world of criminal justice, the then Attorney General himself, one Mr. **Eric Holder Jr.**, agreed that these sentences were unjust. This to where he gave new directive to the **U.S. Department of Justice ("DOJ")** and it's attorney's to " limit the use of these ' **mandatory minimum enhancement's,**' to which became known as the " **2013 Holder Policy**," or " Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases. "[2]

Also, the the Honorable President Barack Obama, **issued clear directive to the then Congress that if it did not address the federal sentencing process' that, he would in fact use his clemency authority to remedy such.** See United States V. Holloway, 68 F. Supp. 3d. 310, 314, n. 17 (E.D.N.Y. 2014)

Therewith, Petitioner did in fact seek clemency via this process and was afforded counsel. Thereafter, **in January 2017,** Petitioner received the mercy that was clearly called for and was **GRANTED clemency** to his sentence to which was reduced to **240 months, or 20 years.** (See Exhibit # 15 attached hereto)

This to what essentially occurred was/is that as to the premise and understanding set forth above and the legal objective of the day, one of the " **two prior felony convictions was removed.**" This to which allowed the application of merely " **one 851 enhancement** " as opposed to two, this to which took the still " **10 year mandatory minimum sentence,** " for the drugs alone ...

---

n. 2: See United States V. Kupa, 976 F. Supp. 2d. 417, n. 1 (E.D.N.Y. 2013) This to which is a decision, i.e. Statement of Reasons published by the Honorable Judge John Gleeson from the Eastern District of New York to which is a scholarly opinion that this Petitioner will rely later in this Petition to direct this Honorable Courts attention when reviewing this request. This to which explains with clarity as to the egregious nature of this Petitioners sentence, and to how renowned Jurists of Reason disagree with the application of such.

... to the reduced level under 21 U.S.C. § 841(b)(1)(A)("...if any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment...")

Petitioner was/is still serving a 20 year mandatory minimum sentence under the mandatory statute for a non-violent drug offense.

Low and behold, after years worth of unjust sentencing in the matter, and " draconian punishments meted out," the Congress has in fact taken steps to cure this defect in our Great American Country, and has made amendments to this recidivist sentence to which this Petitioner is the subject, in the Congressionally enacted " **First Step Act of 2018,**[3] at Title IV, Sentencing Reform, Sec. 401(a), and (b). Pub. L. No. 115-391, 132 Stat. 5194 (2018)

This to which has in fact amended the provisions before mentioned, in Title 21, United States Code Section § 841(b)(1)(A)(vii)("... if any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such a person shall be sentenced to a term of imprisonment of ' not less than 15 years...'")

This provision of the Act, however, has not been made retroactive to persons already sentenced, where such could petition for relief.[4]

---

n. 3: Take note that this First Step Act, will hereinafter be referred to as " the Act," or " the First Step Act " throughout the course of this Petition for extraordinary circumstances.

n. 4: Petitioner does however, note that this may be a compelling issue to consider when deciding to grant this extraordinary request for compass-release, and will be presented in argument thereof later in this request.

What is a retroactive element of this Congressionally enacted reform to these criminal sentences is the availability for prisoner's in this Petitioners circumstances to seek what is known as a " **Compassionate Release.** " [5]

Therein, the amendments made at paragraphs **(5)(A)(i), and (ii)**. This by making a person (prisoner) over **60 years of age,** and having served **2/3** of the sentence imposed, an " **Elderly Offender,**" for the purposes of **Compassionate Release.**" (id.)

That as to the fact that Petitioner has in fact served **2/3** of the " 20 year sentence imposed, " and is otherwise over **60 years old** he is in fact eligible to be considered for a Compassionate release. "

There is however, a prerequisite for this compassionate release to which was amended by this **First Step Act at Pub. L. No. 115-391, 132 Stat. 5194 (2018).** A court can grant compassionate release on a motion of the defendant, " after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt ' **of such a request by the Warden of the defendant's facility, whichever is earlier...**" First Step Act (id.)

Thereafter, the institution, here at the Federal Correctional Institution **SAFFORD,** published it's **NOTICE TO THE INMATE POPULATION** to which acknowledged the recent enactment, and therewith cited:

---

n. 5: See Title VI, of the Act, entitled " MISCELLANEOUS CRIMINAL JUSTICE, Sec. 603(a). This to which has in fact amended the Congressionally enacted FEDERAL PRISONER REENTRY INITIATIVE REAUTHORIZATION: " MODIFICATION OF IMPOSED TERM OF IMPRISONMENT. ((a) FEDERAL PRISONER REENTRY INITIATIVE-REAUTHORIZATION-Section 231(g) of the Second Chance Act of 2007)(34 U.S.-C. § 60541(g)-).

" Inmates who believe they are eligible for a reduction in sentence are reminded that they may initiate the Bureau review process by submitting a request in writing to the warden. "

(See Attachment A, hereto at Exhibit # 4)

This to comport with the Act's availability, and the contemporaneous Bureau of Prisons Policy Statement's therewith. See PS 5050.49 et seq.

## A. PRESENTMENT OF REQUEST AND EXHAUSTION OF ADMINISTRATIVE APPEALS:

### (i) " WRITTEN REQUEST FOR COMPASSIONATE RELEASE:"

As this Petitioner clearly qualifies for all of the requirements to which are embedded in the First Step Act's amendment's to the law regarding " Compassionate Release, " on 3-05-2019, this Petitioner prepared a " WRITTEN REQUEST " to which contained an " INMATE REQUEST TO STAFF form BP-S148.055[6] and 6 additional pages of text in support of the request, including an attachment-A," and attempted to hand this " written request " to the Institution's Warden at the mainline (lunch hour) function of the facility to when he is accessible. (See Att. # A, EXH. # 1, and all additional appendeces thereto)

This Warden, once CHRISTIAN BURCH, would not in fact accept the documentation, and therewith, verbally directed that " [I] see the Unit Team in the matter, that ' [he] was doing it that way.'" Therewith, Petitioner noticed

n. 6: Please take note, that this Written Request form is required by policy, See PS 5511.07.

... said Warden, that this was " not in fact the proper procedure," which he did agree, however, stated therewith that, " **this is the way ' he was doing it.'**" Petitioner thereafter complied and approached the **CHOLLA UNIT TEAM COUNSELOR PATE,** who then directed me to one **CASE MANAGER WARNER.**

Mr. **WARNER (CHOLLA UNIT CASE MANAGER),** did not wish to engage in the matter, however, directed that " [Petitioner] leave the package on his desk, " and directed that [Petitioner] leave his office. Petitioner complied with this directive. Within one hour, Petitioner was called back to Mr. **WARNER'S Office,** from his work assignment at Unicor, to where he did change his attitude in the matter. He handed Petitioner the package containing the " Written Request " and directed that Petitioner " hand the request to the institution's **CASE MANAGER COORDINATOR RUIZ. (CMC RUIZ)** As at that time Petitioner was unable to do such for there was no mainline function and he had to return to his work assignment, he left the office and later filed an Electronic Request to Staff detailing the days activities to the warden attempting " an Informal Resolution " and Notice of the fact of " attempt at written request for compassionate release, " and the fact that the failure to receive the package was against the law and the policy.[7]  (**id. Att. # A, EXH. # 2**)

On 3-07-2019, Petitioner did in fact approach the **CASE MANAGER COORDINATOR RUIZ (CMC RUIZ),** again, at the institution's Mainline function at food service (Kitchen) at the " lunch hour, " and attempted, " again " to hand this " **WRITTEN REQUEST** " to him (as directed) to whom did " not in fact accept ..

n. 7: Note that, the " Electronic Request to Staff " is a recently implemented function for Federal Prisoners to have direct access to staff members via a close circuit e-mailing system coined TRULINCS, or Trust Fund Limited Inmate Computed System. See PS 4500.12, Chapter 14.10 (k).

Continued from page Ten

... this written request. " **Mr. Ruiz,** therewith instructed Petitioner to " **send to him an ELECTRONIC REQUEST TO STAFF** " via the closed circuit intranet style communication before mentioned. Petitioner immediately attempted to educate Mr. Ruiz to the fact that this was " out of line with law, and policy, including the procedures therewith. " That " Petitioner did possess the ' **written request in his hand,**' that very moment and attempted to hand the documentation to him again. " Mr. Ruiz, again refused to accept the request, and at his direction Petitioner departed the area.

Thereafter, Petitioner then, made NOTICE to Mr. Ruiz, via the closed circuit request to staff, making yet another request, citing that this was an " INFORMAL RESOLUTION in this matter. " (id. EXH. # 3) [8]

Therein, Petitioner gave " **good faith NOTICE** " that he would await a period of **"1-week,** " until the following Friday before he proceeded with the " **Formal Administrative Remedy Process embedded in 28 CFR § 542. et seq.**" (id. EXH. # 3)

However, as the Notice to the Warden, **Petitioner** " **Did not in fact receive a response from the CMC in the notice,** " these official's were thus, clearly and unambiguously violating these process and procedures in a bounce the ball conundrum of administrative gamemanship.

---

n. 8: <u>See</u> 28 CFR § 542.13(a) This Informal request procedure embedded in the Federal Regulation and the corresponding policy does not state with specificity of how exactly to present the Informal Resolution, it merely describes that " Each Warden shall establish procedures to allow for the informal resolution of inmate complaints." (id.)

This was in fact " the Second attempt at a good faith resolution of the matter, and the presentment of ' the written request for compassionate release, under the requirements of the First Step Act's directive, " to which these official's were arbitrarily acting outside of such. "

Thus, Petitioner did in fact seek to obtain an administrative remedy form from a completely different Unit Counsel (NOT NAMED) to whom agreed with my proceeding and wholly disagreed with these official's conduct in the matter. Petitioner obtained an " **ADMINISTRATIVE REMEDY FORM BP-229(13),** " or better known as a " **BP-9,** " **attaching all of the prior documents, including the " written request itself, " taking such back to the original counselor's** (PATE) on **3-18-2019.** Stating therein that this was being presented " in good faith, respectfully requesting that there be resolution to the obliteration of the process' (violation) to the Congressionally enacted law, and policies thereto, this antecedent to the presentment of the administrative remedy process required under the Prisoner Litigation Reform Act of 1995 ("PLRA"), codified at 42 U.S.C. § 1997e(a), **and 28 CFR § 542 et seq.,** including the **First Step Act's amendment's at Sec. 603(C)(iii)( id. EXH. # 5 )**

This for the law is clear in the matter, where it unambiguously states:

" an inmate has the ability to <u>request</u> a <u>sentence</u> <u>reduction</u> <u>pursuant</u> to subsection (c)(1)(A),..."

(id. First Step Act, Section 603(a)(C)(i)( See Also, EXH. # 1, Att. A)

**The corresponding policy statement is clear where it states clearly states that, this " REQUEST: "**

" <u>shall</u> <u>be</u> <u>submitted</u> <u>to</u> the <u>warden</u>... "

and therewith, this request:

" <u>Shall</u> <u>be</u> <u>in</u> <u>writting</u>..."

(See id. EXH. # 5, also PS 5050.49(2), and 28 CFR § 571.61 (a))

Petitioner requested as a remedy therewith, that, as all of the " attachment(s), including the written request itself, " was appended thereto, and that the Warden " to whom is responsible for the review of the BP-9, Administrative Remedy " would receive such, again, have view of the request.

Petitioner therewith, as cited, went back to the Case manager **Warner,** to whom again disassociated responsibility and sent Petitioner back to Counselor (PATE) **to who stated: " [he] was only doing what he was told."**

Mr. Pate inquired therewith as to what was in ' the package.' " Petitioner told him that it was a BP-9 Administrative Remedy Request Form and **all of the attachment(s). "** [He] therewith opened the package and pulled off one of the 4 copies and accepted the documentation as filed.

The very next day, Petitioner was again called from work at Unicor, to where Counselor PATE handed Petitioner the documentation to which contained a " rejection notice, " stating that somehow, " [Petitioner] did not seek to **attempt an INFORMAL RESOLUTION ,... and** [Petitioner] did not present evidence **of his attempt...." (EXH. # 6)(The warden had still not accepted the request)**

As that Could not be farther from the truth, Petitioner sought and obtained an " ADMINISTRATIVE REMEDY APPEAL FORM, "i.e., " REGIONAL ADMINISTRATIVE REMEDY APPEAL, BP-230(13), form, and on 3-20-2019, mailed a certified and return receipt U.S. Mail parcel containing all of the above mentioned, and requested " administrative oversight " and a clear requested the " acceptance of my documentation. " (EXH. # 7, and all other documentation attached thereto)

As said mail " return receipt form " was sent to Stockton, California, from Arizona, this Petitioner did not receive such until, **April 1, 2019,** the very same day, Petitioner received yet another " rejection notice, " from ...

... the U.S. Department of Justice's, Federal Bureau of Prisons, Western Regional Director's Office, stating in unison with the response to the BP-9:

" [Petitioner] did not seek an informal resolution prior to the to submission of administrative remedy..."

(See, id. EXH's 8 & 9)

Thereafter, and again, on 4-04-2019, Petitioner sought review of this decision, and again, requested administrative oversight, and receipt of the ' Written Request for Compassionate Release,'" from the U.S. Department of Justice's, Federal Bureau of Prisons, Office of the General Counsel, in Washington, D.C. via a BP-231(13) form, better known as a BP-11 Appeal, this coupled with a " cover letter " explaining to the General Counsel, the passings and the obliteration of the process and blatant and willful violation of the First Step Act, and it's corresponding policy statement's process' thereto. For the fact that the Warden nor any of his administrative agent's to this day would even receive the written request form this Petitioner. (See - EXH. # 's 10, 11 & 12 )

Petitioner too had family members place phone calls to the General Counsel attempting to alert such to their support and distaste for the process thus far.

Thereafter, on May 13, 2019, Petitioner received via the " General Correspondence Mail " at the facility, a package containing all of this Petitioner's documentation in return, with another " rejection notice, " as citing to the statement:

" ...You should have filed at the institution level...' Concur with the rationale of Regional Office and/or Institution for rejection for rejection. Follow directions Provided on Prior rejection Notices.."

(See EXH. # 13 ) ( ' This without any envelope, opened outside of his presence)

On **May 14, 2019,** at these directive, Petitioner in fact forwarded one last attempt to informally resolve the matter and to comport with the Act's requirement's to have " the warden receive the written request, " via the e-mailing system available here at the institution. Therein, this Petitioner gave said warden " 7 **working days to respond** " before considering in the totality of the circumstances that [he] and the BOP were clearly declining to receive the request. (EXH. # 14)

The warden did not even think it prudent to give a response.

### (ii) LEGAL STANDARD REGARDING EXHAUSTION:

The **Prisoner Litigation Reform Act** of 1995 (" PLRA "), 110 Stat. 1321-73 as amended at **Title 42 of the United States Code** § 1997e(a) (1994, Supp. V) directs that:

> " **No action shall be brought with** <u>respect to prison conditions</u>
> **under section 1983 of this Title** <u>or any other Federal law,</u> by a
> **prisoner confined in any jail, prison, or other correctional**
> **facility until such remedies as are available are exhausted...**"

<u>See</u> <u>Porter V. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed. 2d. 12 (2002)

"...1997e(a)'s exhaustion requirement applies to all prisoner's seeking redress for prison circumstances. " Ibid.

To satisfy § 1997e(a) an inmate must file a " timely grievance " utilizing the rules of the prison grievance process, including any time limitations. <u>See</u> <u>Jones V. Brock</u>, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed. 2d. 789 (2002).

Requiring exhaustion allows prison official's " an opportunity to resolve disputes concerning the exercise of their responsibilities ' before being hauled into court.' " This has the potential to reduce the number of inmate suits that are filed by producing a useful administrative record. " Id. Brock, at 807.

The grievance process " must provide administrators a ' fair opportunity under the circumstances to address the problem ' that will later form the basis of the suit." Id. at 199 (quoting Johnson V. Johnson, 385 F. 3d. 503, 522., also Ricardo V. Rausch, 375 F. 3d. 521, 524 (CA 7 2004)(" Exhaustion is satisfied if grievance served it's function of ' alerting the state and inviting corrective action.'"))

The BOP has established an administrative procedure by which an inmate may seek review of almost any aspect of imprisonment. See 28 CFR §§ 542. 10 et seq. As a first step in the process, an inmate must normally present his complaint " informally " to prison staff using a BP-8 form. If the " informal complaint does not resolve the dispute, " the inmate may make ' an ' Administrative Remedy Request ' concerning the dispute ' to the warden ' using a BP-9 form. " See Nunez V. Duncan, 591 F. 3d. 1217, 1219 (9th Cir. 2010), also 28 CFR § 542. 14(a).

" If the warden renders an adverse decision on the BP-9, the inmate may appeal to the Regional Director using a BP-10 form. The BP-10 must be submitted to the Regional Director within 20 calendar days of the date of the Warden's decision. Id. (also 28 CFR § 542. 15 (a)). The inmate may then appeal an adverse decision by the Regional Director to the Central Office within 30 calendar days from the date of the Region's decision. Id. at 1219-20

However, the Prisoner Litigation Reform Act is only for " actions, ...brought with respect to prison conditions. " See Yellowbear V. Newell, 621- F.3d 517, 519 (10th Cir. 2015)

AS to the factual basis presented herein, this Petitioner has in fact " " attempted to present a ' WRITTEN REQUEST FOR COMPASSIONATE RELEASE ' to the WARDEN OF THE FCI SAFFORD, one CHRISTIAN BURCH, " to whom has outright refused to " receive the request form such. "

None of the FCI SAFFORD'S administrative official's (agents) therewith, have received the numerous attempts to formally and correctly present this Written request the same.

None of the other levels of the **Federal Bureau of Prisons administrative branches** thereafter, have received the many attempts to simply make the presentment of the request, and instead have choose to make use of a formulaic administrative process' procedural conundrum's with which to disassociate itself from the requirement's of the recently enacted amendment's to the process for " Compassionate Release. " See **First Step Act. Pub. L. No. 115-391, 132 Stat. 5194 (2018)**

Therefore, as the law (Act) clearly states that " **after the lapse of 30 days from the** receipt **of such a request by the warden of the defendant's facility, whichever is earlier ....**" This Petitioner (Defendant) may now make motion to this Honorable Court of original criminal jurisdiction. See **Clark V. Upton, No. 3:19-cv-92-FDW, 2019 U.S. Dist. LEXIS 31807 (W.D.N.C February 28, 2019)( Citing United States V. Sisk, 2015 U.S. Dist. LEXIS 62772, 2015 WL 13424464 (W.D.N.C. May 13, 2015)(" Section 3582(c)(1)(A) allows the sentencing court... to reduce an inmate's term of imprisonment...**" ))

**THEREFORE as to the fact that a period of 30 days has long passed and the Warden, including the FBOP has clearly declined to make this motion, let this request stand as exhausted and this Petition be ripe for review with this Honorable Court, to which will be presented herewith respectfully, to wit;**

## III. LEGAL BASIS IN SUPPORT OF PETITION FOR COMPASSIONATE RELEASE:

Prior to the First Step Act of 2018, this mechanism for relief was available the same to which delineated that;

> " Section 3582(c) of Title 18 provides a limited set of circumstances under which a sentencing court may modify a defendant's term of imprisonment. Under Clause (1)(A) of the section, a sentencing court: "

> " Upon Motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction. or; (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g) and that reduction is consistent with applicable policy statements issued by the sentencing commission; ...."

See 18 U.S.C. §§ 3582(c)(1)(A)(i), and (ii); see also Rodriguez-Aguirre V. Hudgins, 739 Fed. Appx. 489, 491 (10th Cir. 2018)

Therein, this Tenth Circuit highlighted the fact that:

" the emphasis language makes a motion by the BOP a necessary prerequisite for a court to reduce a sentence based on compassionate release under § 3582(c)(1)(A). " (id. Citing Cruz-Pagan V. Warden, FCC Coleman-Low, 486F. App'x 77, 79 (11th Cir. 2012)(" The plain meaning of [§ 3582(c)(1)(A)] requires a motion by the Director of the BOP as a condition precedent to the district court before it can reduce a term of imprisonment.")) Id.

Section 3582(c)(1)(A) gave the BOP absolute discretion regarding whether to file a motion, and " the BOP's denial of a defendant's compassionate release/reduction in sentence request and declination to file a motion is not a ' judicially reviewable decision. " Id. (Citing Fields V. Warden Allenwood USP, 684 F. App'x 121, 123 (3d. Cir. 2017))

The Congressionally enacted First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) has substantively changed that mechanism of the presentment of the claims in court, where it states that: " Now, in addition to a motion by the Director of the Bureau of Prisons, a court can grant compassionate release on a ' motion form the defendant, " after ' the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, ' or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, which ever is earlier..." Id.

Furthermore, this " age requirement has been changed as well, " in the body of the First Step Act at Sec. 603(a)(5)(A)(i) making a person eligible for " as elderly " to be the age of 60 years old. "

Thereafter, at clause (ii) having served 2/3 of his time imprisonment. Id.

This Petitioner meets all of the above cited · criteria for a compassionate release from his term of imprisonment.

This Petitioner has been granted clemency to a twenty year sentence as opposed to the " Life sentence " that he received for a non-violent drug offense, to which he was not an " organizer or leader, " he possessed no firearm in connection with the offense, " and to which there is ambiguity as to why it was that he did not plead guilty in the first instance.

This Honorable Court should GRANT the request for compassionate release of this Petitioner, and to which, would serve the interest of justice, including all of the factors relevant at Section 3553(a) of Title 18, United States Code.

Petitioner will make his argument thereto, hereinafter to wit;

## IV. ARGUMENT IN SUPPORT OF COMPASSIONATE RELEASE:

A Sentencing Court, in making this determination to grant this equitable relief by and through **18 U.S.C. § 3582(c)(1)(A),** " requires the consideration of the sentencing factors set out in **18 U.S.C. § 3553(a),** relative to whether a sentence reduction is ultimately appropriate. " **Id. Rodriguez-Aguirre, 739 Fed. Appx. at 491.**

Therein, the Tenth Circuit noted that " the BOP would not abuse it's discretion in denying a request for compassionate release by ' relying on **the seriousness of the offense,...'** under **18 U.S.C. § 3553(a)(2)(A).** " **id.** Petitioner agrees, and therewith points to the seriousness of the offense.

### A. 3553(a) FACTORS:

#### (i) SERIOUSNESS OF THE OFFENSE:

As in the original request to the warden in this administrative request in this action, and herein this Petition, this Petitioner pointed to a U.S. District Court decision from the **Eastern District of New York,** to where one renowned Jurist of Reason, explained to a " T " the issues regarding the dynamics of a federal drug offender's sentence, when he is the subject to -

... See Attachment-A hereto, at EXH. # 1, pg. 5, citing <u>United States V.</u> <u>Kupa</u>, 976 F. Supp. 2d. 417 ( E.D.N.Y. October 9, 2013)

As to the political tide of the day, " at the time," the Honorable Judge **John Gleeson,** decripted the function of the " recidivist enhancements, " and quoted the then Attorney General, Eric Holder's Policy's regarding charging and the application's of the enhancements.

In agreement thereto, Judge Gleeson, stated that " Prior felony informations don't just ' tinker with sentencing outcomes,' they produce the sentencing equivalent of ' **a two-by-four to the forehead.'"** Id. at 976 F. Supp. 2d. 419.

He stated therewith, that, " The Governments use of them to coerce guilty pleas and produce sentences so excessively severe that they ' **take your breath away....'"** id.

Again, as stated, later on in the sentencing decision, Judge Gleeson describes this as being used during a ' plea negotiation, ' the government ' **ushered in an 800 pound gorilla into the case,..."** Id. at 459.

Petitioner's case is predicated upon a quantity of methamphetamine to which produced a **" 10 year mandatory minimum to life maximum prison sentence. under 21 U.S.C. § 841(b)(1)(A). "** ( i.e., 50 grams or more of methamphetamine)

This to which was the result of an incident that occurred that he claimed to have been helping a friend to make good on a debt, and to " prevent any incidents of violence or potential violence that may have resulted from the failure to pay what was owed. " **Id. Jury Trial Transcript.**

This assistance proved to be detrimental for it caused this Petitioner to be targeted in the investigation as the result, and ultimately arrested in connection with such.

The weight of the methamphetamine was substantial, however, to which this too was the subject of controversy at the original trial. Nevertheless, there is an amount to which the Congress has determined to warrant the triggering of " a mandatory minimum sentence. " However, Petitioner's participation in this distribution offense was not atenuated to any larger degree and this should be considered in this Honorable Court's determination of the " Seriousness of this offense. " See United States V. Ellis, 868 F. 3d. 1155 (10th Cir. 2017)

This Petitioner too was a recidivist to which enhanced his sentence to one for " life imprisonment " under the mandatory provisions under § 841(b)(1)(A), " for two prior felony convictions. "

Petitioner will highlight the fact that though " not retroactive " (like this element) of the First Step Act of 2018, the Congress has now corrected this " draconian amount of time this ' 800 lb. Gorilla entails,'" and has now amended (changed) this " life sentence " to a period of " not more than 25 years. " See Title IV, Sentencing Reform, Sec. 401(a), and (b) of the First Step Act of 2018.

Petitioner also posits that, also, the Act adjusted the " one prior felony conviction " element of 841(b)(1)(A) to ' not less than 15 years...'" id.

Therewith, this Petitioner points to the fact that in the tide of the Obama administration's fight against these unjust sentences, Honorable President Barack Obama did in fact GRANT clemency to this Petitioner in January of 2017. (See EXH. # 15 )

However, the President, and it's attorney's merely amended the sentence to reflect a 20 **year sentence,** " to which " at the time, " would be the equivalent of " **the removal of one of the recidivist enhancements,** " and therewith amending the sentence to the " then mandatory minimum for one prior felony conviction."

Though this Clemency is not a " new judgment, " nor an invalidation of the court-imposed judgment, See **United States V. Buenrostro,** 895 F. 3d. 1160, **1165-66 (9th Cir. 2018)(citing Schick V. Reed,** 419 U.S. 256, 260, 95 S.Ct. **379, 42 L.Ed. 2d. 430 (1974)(citations omitted))** it is readily inferable to what the dynamics of the clemency application and the result entailed.

Petitioner therewith, would point to the fact that, in the event that this clemency was addressed 1 year and a half later, the reduction would have been reflective of **" a fifteen year [mandatory-minimum] "** and not the 20. **(id."Sentencing Refom, Sec. 401, supra of the Fist Step Act at Title IV. ")**

Thus, as this Petitioner's offense is " serious " the " seriousness " of such has now been addressed by the very Congress who makes that determination, and this Petitioner respectfully requests that this Honorable Court take this change in dynamics into consideration when making the determination in granting this clearly warranted compassionate release.

### (ii) ADEQUATE DETERRENCE:

Under § 3553(a), the sentencing court should consider,...the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide **'adequate deterrence,** ' to protect the public, and to provide the defendant with needed training or treatment." See **United States V. Kristl,** 437 F.3d. 1050, 1053- **(10th Cir. 2006)**

As Judge Gleeson stated in the case cited in **Kupa,** the sentences from "
prior felony convictions, " are the " equivalent of a ' **two-by-four to the
forehead,' "** and are so " **excessively severe they ' take your breath away,'"**
the " adequate deterrence prong of the factors set forth at § 3553(a), are
therewith, addressed as a " no-brainer. "

This " elderly Petitioner " has suffered over a decade of his aged life
in Federal prison to which most of such, he carried the burden of a " life
sentence. " This to which was inside of a maximum United States
penitentiary.(i.e. USP Victorville )

Some of Petitioner's breath has been reinstated as the result of the
grace given to him by President Obama, however as to the **ever so changing world**
of criminal sentencing, especially in terms of drug offenders, and now as the
result of recidivist enhancements that " take your breath away, " this
reinstatement could have been to reflect **five less years** that effectuated,
respectfully.

This Petitioner, therewith, posits that " **he has been deterred." (i.e.
As having been " hit in the head with a two-by-four.")**

Thereto, in terms of " recidivism, " this Petitioner would point to
another U.S. District Court Judge across the **Country to which explained the**
possibility of recidivism at this age, as " being ' **very low.'" See United
States V. Nellum,** No. 2:04-CR-30-PS, 2005 **U.S. Dist. LEXIS** 1568 (D.N.Ind.,
February 3, 2005)

Therein, it cited to an empirically researched report by the **U.S.
Sentencing Commission in May 2004, " Recidivism rates decline consistently as
age increases." Id. U.S.S.C., Measuring Recidivism: The Criminal History
Computation of the Federal Sentencing Guidelines, at 12. "** Id. pg. 9.

In this nearly 15 year old document, this District Court Judge acknowledged that a defendant over the age of 50, had a recidivism rate of **19.8 %,** and therewith stated that " one can only reasonably assume that the trend of decreasing recidivisim rates continues downward after the age of 50." **id.**

Nonetheless, under **§ 3553(a)(2)(C),** the age of the offender is plainly relevant to the issue of " **protecting the public from further crimes of the defendant. " id.**

This Petitioner is over 60 years old and is otherwise incapacitated and surely deterred from future criminal activity.

He has worked in the Federal Bureau of Prisons at the USP Victorville to where, Petitioner had originally volunteered to stay after, the clemency was granted to assist other younger inmates on work ethic and training in the facilities shop.

Thereafter, has continued his diligent work ethics here at the FCI Safford, in the institution's (FBOP's) Unicor work program where is is the leader of his line, and this court can readily interview any of his supervisor's, to see his progress, to which this Petitioner believes is simply unnecessary under the circumstances provided herein to which clearly warrant this Court's authority to grant the relief requested herein.

Petitioner has served over **2/3 of the 20 year sentence,** and is otherwise a qualifier for release. **This simply to reflect a** 15 year sentence, as opposed to the 20.

This being mindful that there was a dispute as to whether this " 15 years " was offered as a plea deal in the first instance. Nevertheless, as the dynamics of this Petitioner's sentence have changed " drastically, " since this time, it is not unreasonable to make the inference that this sentence of 15 years under a plea agreement would have been plausible had it been under these factors at the time.

However, a sentence of **15 years,** would be " sufficient but not greater than necessary to achieve the purposes of sentencing under § 3553(a)(2). " Moreso, in line with other cases to which are disparate. See United States V. Warwick, **No. 16-CR-4572-WJ,** 2018 U.S. Dist. LEXIS 103120 (D.N.M. June 20, **2018), United States V. Ibarra-Sandoval,** 265 F. Supp. 3d. 1249 **(D.N.M.** September 26, 2017), and **United States V. Roybal,** 188 F. Supp. 3d. 1163 **(D.N.M. May 24, 2016)** to name a few.

This Petitioner posits too, that he does in fact have a residence to be released. See **EXH. # 1, pg. 5 of 6.** He Has insurance through the family business, **(Id.)** and has work upon release. **(id.)**

Upon the reduction of his sentence to the 15 years as being certainly called for under all of the before mentioned, this Court may see and take notice again, that he is in fact an elderly non-violent prisoner, to whom has served well over a decade in prison, and does not pose a " threat or serious risk to the community either. " See USSG § 1B1.10, cmt. n. 1 (B).

**Therefore,** this Petitioner is respectfully requesting that this Honorable Court **GRANT** a " **Compassionate Release** " to a prisoner that clearly calls for such, and thereto, calls such to **ORDER** that the **FBOP** make the preparations for the immediate release of such.

## B. CONCLUSION:

WHEREFORE, Petitioner respectfully requests that this Honorable Court GRANT the Compassionate Release of this Petitioner and exercise it's properly endowed discretion pursuant to 18 U.S.C. § 3582(c)(1)(A), and ORDER the Petitioner's sentence to be amended to a period of 15 years (180 months), and therewith the Petitioner's immediate release respectfully.

PETITIONER, KIM DAVIS BECKSTROM
5 - 28 - 2019

## V. CERTIFICATE OF SERVICE:

That I, KIM DAVIS BECKSTROM, do hereby swear and affirm, that I did, mail a true and complete copy of this Petition for Compassionate Release to the Respondent-Plaintiff, by placing such into the U.S. Post Mail, here at the prison, postage, pre-paid, on this 28ᵗʰ day of May 2019, and addressed as follows: (See 28 U.S.C. § 1746 )

PETITIONER, KIM DAVIS BECKSTROM

U.S. Department of Justice
U.S. Attorney's Office
for the District of Utah
185 South State Street, Ste. 400
Salt Lake City, Utah
84101

cc:

U.S. Attorney General
950 Pennsylvania Ave., N.W.
Washington, DC.
20530